UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-578-FDW

| WILLIAM CARAWAN, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| FNU MITCHELL, ET AL., | ) | |
| Defendants. | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Amended Complaint, (Doc. No. 13). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 7).

**I.    BACKGROUND**

*Pro se* Plaintiff William Carawan, Jr., filed a civil rights suit pursuant to 42 U.S.C. § 1983. His original Complaint, (Doc. No. 1), was dismissed on initial review for legal insufficiency, (Doc. No. 12), without prejudice to file an Amended Complaint, which he has now done. (Doc. No. 13).

Construing the Amended Compliant liberally and accepting the allegations as true, Superintendent Mitchell imposed a rule, enforced by an unidentified Manager in the Richmond Unit, Unit Manager, Horne, and Officers Lee, Tillman, and Williams, that is contradictory to the North Carolina Department of Public Safety policy regarding the loss of legal materials such as books. As a result of this policy, Plaintiff suffered the loss of all his religious reading material, and left him only with books considered to be "legal material" by the policy. (Doc. No. 13 at 3). Had the NC DPS policy been applied, Plaintiff would have lost only three books, rather than 10. Nor was he given the less severe option of storing the books rather than having them sent to a relative,

1

where they never arrived.

Plaintiff practices Islam sincerely, and believes that he is required to seek knowledge as part of his faith. His rights were more than substantially burdened when all his religious books were taken and the only materials that remained accessible were Christian materials. Plaintiff did not learn anything from his religious books before they were confiscated, and there were no other means of reading about Islam of which Plaintiff was aware. The confiscation prevented him from learning.

The deprivation of Plaintiff's books caused an atypical and significant hardship by requiring him to relinquish his religious books so that he could keep his legal books, which he needed to litigate pending and future claims. Defendants did not confirm the legal materials as such, according to NC DPS policy and procedures, which show he is able to possess at least six religious books. Plaintiffs advised Defendants that the books were all legal materials. Had the legal materials been given due process they would have been referred to the director. A tort claim would be fruitless due to res judicata.

Plaintiff seeks reimbursement for the books he was deprived of, and compensatory, punitive, and nominal damages. He argues that "relief" should not be deemed moot because he is likely to be shipped to Lanesboro C.I. (Doc. No. 13 at 4).

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory

or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519 (1972) (a pro se complaint, however inartfully pled, must be held to less stringent standards than formal pleadings drafted by lawyers); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the pleadings is particularly appropriate where … there is a pro se complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

3

### III. DISCUSSION

### (1) Free Speech and Exercise of Religion

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech…." U.S. Const. Amend I. The First Amendment applies to the states through the Fourteenth Amendment. See Everson v. Bd. of Educ., 330 U.S. 1, 15 (1947). A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Procunier v. Martinez, 416 U.S. 396, 412 (1974); Turner v. Safley, 482 U.S. 78, 89-91 (1987); Pittman v. Hutto, 594 F.2d 407, 410 (4th Cir. 1979). When a prison restriction infringes upon an inmate's First Amendment rights, the alleged infringement "must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979) (citing Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 129 (1977)).

To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). For government conduct to survive scrutiny under the Establishment Clause, "(1) it must have a secular purpose; (2) its principal or primary effect must neither advance nor inhibit religion; and (3) it must not foster an excessive government entanglement with religion." Buxton v. Kurtinitis, 862 F.3d 423, 432 (4th Cir. 2017) (citing Lemon v. Kurtzman, 403 U.S. 602, 612–13 (1971)); see also Madison v. Riter, 355 F.3d 310, 316 (4th Cir. 2003). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." O'Lone v. Estate of

Shabazz, 482 U.S. 342, 349 (1987) (quoting Turner, 482 U.S. at 89).

In deciding whether a defendant's actions can be sustained as reasonably related to legitimate penological interests, the court must consider the following four factors: (1) whether there is a valid, rational connection between the regulation and the legitimate penological interest; (2) whether there are alternative means of exercising the right in question that remain open to prisoners; (3) the impact accommodation of the asserted constitutional right would have on guards and other inmates and on the allocation of prison resources; and (4) whether ready alternatives exist which accommodate the right and satisfy the penological interest.  See Turner, 482 U.S. at 89-90.  Substantial deference is accorded to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. Id. Any regulation of speech must not be any more encompassing than necessary to further the penological interested involved. See Montcalm Publishing Corp. v. Beck, 80 F.3d 105, 108 (4th Cir. 1996) (citing Martinez, 416 U.S. at 424). Claims brought under the First Amendment are subject to a less demanding standard of proof than claims brought under RLUIPA, with RLUIPA claims requiring "strict scrutiny instead of reasonableness." See Lovelace v. Lee, 472 F.3d 174, 199 n.8 (4th Cir. 2006).

Plaintiff alleges that the Defendants violated his freedom to practice religion and freedom of expression when he was forced to reduce the number of books in his possession, which necessarily required him to eliminate religious and legal books.

This claim is not plainly frivolous and will be permitted to proceed.

## (2) RLUIPA

RLUIPA provides, in part, that no government shall impose a "substantial burden" on the religious exercise of a person residing in or confined to an institution, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). "RLUIPA thus protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." Cutter v. Wilkinson, 544 U.S. 709, 721 (2005). A plaintiff bears the initial burden of showing that the challenged policy substantially burdens his exercise of his religion. See 42 U.S.C. § 2000cc-2(b); Holt v. Hobbs, 135 S. Ct. 853, 862 (2015). The statute defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); Smith v. Ozmint, 578 F.3d 246, 251 (4th Cir. 2009). A "'substantial burden' is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs, [] or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning one of the precepts of her religion on the other hand." Lovelace, 472 F.3d at 187 (quotations, citation, and alterations omitted).

Once the inmate makes a *prima facie* showing, the burden shifts to the government to prove that "the burden in question is the least restrictive means of furthering a compelling governmental interest." Ozmint, 578 F.3d at 250. "'RLUIPA adopts a . . . strict scrutiny' standard." Couch v. Jabe, 679 F.3d 197, 203 (4th Cir. 2012) (quoting Lovelace, 472 F.3d at 198 n.8). Under RLUIPA, the court must give "due deference to the experience and expertise of prison and jail administrators

in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." Cutter, 544 U.S. at 723 (quotation omitted). "However, 'a court should not rubber stamp or mechanically accept the judgments of prison administrators.' . . . Rather, due deference will be afforded to those explanations that sufficiently 'take[] into account any institutional need to maintain good order, security, and discipline.'" Couch, 679 F.3d at 201 (quoting Lovelace, 472 F.3d at 190).

The Amended Complaint minimally states a facially sufficient claim of a RLUIPA violation and, therefore, will be permitted to proceed.

**(3)** **Due Process**

The Fourteenth Amendment's Due Process Clause provides that no person shall be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend XIV. Where a state employee's random, unauthorized act deprives an individual of property, either negligently or intentionally, the individual is relegated to his state post-deprivation process, so long as the State provides an adequate post-deprivation remedy. Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), *overruled on other grounds by* Daniels v. Williams, 474 U.S. 327 (1986)). The Parratt-Hudson doctrine is limited to cases involving "a random and unauthorized act by a state employee, . . . not a result of some established state procedure." Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). When the challenge is to an "established state procedure," or when the deprivation is inflicted by a state official who is empowered to work deprivations and provide process where it is predictable when those deprivations might occur, the availability of a post-deprivation judicial hearing normally does not satisfy procedural due process. Id.; Zinermon v. Burch, 494 U.S. 113 (1990). The Parratt-Hudson doctrine does not apply when a municipal officer acts pursuant to a municipal policy or custom. Woodard v. Andrus, 419 F.3d 348

(5th Cir. 2005); Matthias v. Bingley, 906 F.2d 1047 (5th Cir. 1990).

Under North Carolina law, an action for conversion will lie against a public official who wrongfully deprives an owner of his property by an unauthorized act. Gallimore v. Sink, 27 N.C.App. 65, 67, 218 S.E.2d 181, 182 (1975). North Carolina's post-deprivation remedies are adequate. N.C. Gen. Stat. § 143-291; see Wilkins v. Whitaker, 714 F.2d 4, 6 (4th Cir. 1983) (due process satisfied where North Carolina tort law provides an adequate avenue for relief for state prisoner).

Plaintiff now appears to allege that Defendants had a policy separate from the North Carolina Department of Public Safety's blanket policy, of restricting the number of books inmates could have in their possession. It is not clear at this preliminary phase whether that blanket policy was a random and unauthorized act for purposes of a due process analysis. Therefore, it is not plainly frivolous and will be permitted to proceed.

### III. CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff's claims survive initial screening by the Court in that they are not clearly frivolous.

**IT IS, THEREFORE, ORDERED that:**

1. Plaintiff's Amended Complaint survives initial review under 28 U.S.C. § 1915(e).

2. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully

instructed to note on the docket when the forms have been mailed to Plaintiff.

Signed: January 26, 2018

Frank D. Whitney
Chief United States District Judge